UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                       :
JOELLE SKAF,                                                           :
                                                                       :
                              Plaintiff,                               :
                                                                       :                    25-CV-6029 (JMF)
              -v-                                                      :
                                                                       :                    OPINION AND ORDER
GOOGLE LLC,                                                            :
                                                                       :
                              Defendant.                              :
                                                                       :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

Plaintiff Joelle Skaf, an Arab woman, was employed by Google until April 17, 2024, when she was terminated following her participation in a workplace protest of Google's relationship with Israel.  In this case, she brings a host of claims under Title VII of the Civil Rights Act of 1964 ("Title VII"),  42 U.S.C. § 2000e *et seq.*; the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code § 8-101 *et seq.*; and the New York Labor Law ("NYLL"), §§ 194(b), 740.  ECF No. 26 ("FAC"), ¶¶ 206-48.  Among other things, she alleges that Google paid her less and denied her promotions on the basis of her sex and Arab ethnicity. She also contends that she was denied a transfer and ultimately terminated in retaliation for complaining about discrimination and about Google's violations of the law.  Google now moves, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss most, but not all of, Skaf's claims.  ECF No. 27; ECF No. 28 ("Def.'s Mem.").  Specifically, Google moves to dismiss all of Skaf's claims other than her claims that she was discriminated against on the basis of her sex.  For the reasons that follow, Google's motion is GRANTED in part and DENIED in part.  The net result is that Skaf's termination-based retaliation claims (Counts 5, 10) and her disparate-pay claims (Counts 3, 9, and 10) may proceed, while her other claims are dismissed.

## BACKGROUND

The following facts are, unless otherwise noted, taken from the First Amended Complaint (the "Complaint") and assumed to be true for purposes of this motion. *See, e.g.*, *LaFaro v. N.Y. Cardiothoracic Grp., PLLC*, 570 F.3d 471, 475 (2d Cir. 2009).

Skaf, an Arab woman, was employed by Google from January 12, 2009, to April 17, 2024. FAC ¶¶ 8-9, 17. In 2015, Skaf was promoted to be a Level 6 ("L6") Staff Software Engineer, and, in January 2018, she was assigned to Google's Cloud computing division. *Id.* ¶¶ 19-20. In February 2022, Skaf was named "Uber Tech Lead (UTL) of Alerting." *Id.* ¶ 31. There were four other UTLs on her team; three of them were male, and all four were non-Arab. *Id.* ¶¶ 36-38. Skaf and the other four UTLs "performed the same work," *id.* ¶ 39, and "were similarly situated in all respects," *id.* ¶ 52; *see also id.* ¶ 46. Yet the other four UTLs were all classified as Level 7 ("L7") and, thus, earned "substantially more than [Skaf] by at least 6 figure [sic]." *Id.* ¶¶ 41, 44. Rajeev Dayal, Skaf's supervisor, "recognized and repeatedly told [her] she was performing the role of an L7 and was mis-levelled." *Id.* ¶ 56. In the fall of 2022, he recommended Skaf for a promotion to correct this mis-levelling, *see id.* ¶ 55, but he departed Google during the promotion process, *see id.* ¶ 57. The Complaint alleges that Dave Mandelbaum, who then became Skaf's supervisor, "did not support her promotion to correct her mis-level[l]ing due to her gender and/or Arab ethnicity." *Id.* ¶¶ 57, 59. As evidence of Mandelbaum's "propensity to discriminate," the Complaint cites two incidents: In 2022, "he used his position on a promotion committee to veto a qualified Arab candidate's promotion"; and in the fall of 2023, he "and other directors" ranked "the two female candidates lowest in a group of L5 candidates going up for promotion to L6, based in one case on discriminatory stereotypes

2

regarding communication style." *Id.* ¶¶ 66(1), 60(2); *see also id.* ¶¶ 62(2)-63(2) (noting two other lawsuits in which female employees claimed they had been underpaid or mis-levelled).[1]

On October 7, 2023, Hamas and its affiliates in the Gaza Strip launched a terrorist attack on Israel, prompting Israel to attack Hamas in turn. In the wake of these events, Skaf was an outspoken critic of Google's involvement with Israel and, the Complaint alleges, was "increasingly subjected to anti-Arab bias." *Id.* ¶ 68; *see also id.* ¶ 69. But Skaf's criticisms of Google for its involvement with Israel long predated the events on and after October 7, 2023. In May 2021, Google won the bid for Israel's "Project Nimbus, a contract to provide cloud computing infrastructure, artificial intelligence and other technology services to the Israeli government and its military, including and [sic] Israeli military efforts in the occupied territories." *Id.* ¶ 22. At or around the time, Skaf "raised concerns" about whether Project Nimbus adhered to Google's "AI Principles" — which provided, among other things, that Google would not design or deploy artificial intelligence technologies "whose principal purpose or implementation is to cause or directly facilitate injury to people" or "whose purpose contravenes widely accepted principles of international law and human rights." *Id.* ¶¶ 22-25. "[I]n response, Google informally flagged" Skaf, but it did not "officially reprimand[]" her. *Id.* ¶ 29. In October 2021, Skaf signed a "drop Nimbus petition." *Id.* ¶ 30.

On October 12, 2023, five days after the Hamas attack, Google's Internal Community Management Team ("ICMT") — an entity responsible for moderating content in accordance with Google's Community Guidelines — advised that employees "should avoid discussing the events unfolding in Israel/Palestine" and limit any posts on the subject to "support of their

---

[1]    The Complaint mistakenly contains two sets of paragraphs numbered 60 through 66. *See* FAC at 10-11. To distinguish between these duplicate sections, the Court cites the first set as Paragraphs 60(1)-66(1) and the second set as Paragraphs 60(2)-66(2).

colleagues." *Id.* ¶¶ 76.  On December 4, 2023, Skaf brought a message on an internal messaging platform stating that "Israel will prevail" to the attention of the ICMT.  *Id.* ¶¶ 70-72.  The ICMT emailed Skaf that the post "was not in violation of community guidelines and would not be taken down" — apparently because it had been made before October 12, 2023, and was "grandfathered in."  *Id.* ¶¶ 75-76.  Shortly thereafter, Skaf asked the ICMT if that meant she could post a meme of a Palestinian flag stating "Palestine will prevail."  *Id.* ¶¶ 79.  When she did not receive a response, she posted the meme the very next day.  *Id.* ¶ 80.  The ICMT promptly removed Skaf's post as "'disruptive' and in violation of" the October 12, 2023 guidance, *id.* ¶ 80, and temporarily banned her from the internal messaging platform, *id.* ¶ 81.

Around the same time, Skaf started posting about Project Nimbus and Gaza in another internal Google forum.  *Id.* ¶ 86.  Through her involvement with these platforms, Skaf allegedly became aware that "many Google employees held anti-Arab animus."  *Id.* ¶ 89.  One colleague, for instance, asked "why Palestinians bothered to have children."  *Id.*; *see also id.* ¶¶ 100-02 (alleging that Skaf later learned that Google employees were doxxed, stalked, or accused of supporting terrorism because they had spoken out against Project Nimbus or worn a "keffiyeh (Palestinian scarf)" to the office).  On March 6, 2024, Skaf published a post asking whether Google should cancel Project Nimbus "[t]o avoid complicity in war crimes [and] respect its principles."  *Id.* ¶ 107.  In response, some colleagues posted memes accusing Skaf "of 'ruining International Women's Day . . . with her predictably hateful agenda'" or "accusing her of 'supporting terrorists who use sexual violence as a weapon of war.'"  *Id.* ¶ 114.  Skaf complained to the ICMT, which took down "some but not all of the attacks on her."  *Id.* ¶ 116.

On March 8, 2024, Skaf received an email from Google Security notifying her that she had been "doxxed" by having her name, work location, and internal Google profile picture

included in a Daily Wire press article.  *Id.* ¶ 119.  The article included screenshots of Skaf's questions and comments from the internal Google messaging systems about Israel.  *Id.* ¶ 120. Shortly thereafter, on March 14, 2026, Skaf filed a complaint with Google's Employee Relations ("ER") about being doxxed and "the racial and/or ethnic harassment, she had suffered since October 7, 2023."  *Id.* ¶¶ 124-38.  Google failed to respond to the complaint or take any corrective action.  *Id.* ¶¶ 126, 141.  More significantly, the Complaint alleges that Skaf was the victim of "immediate" retaliation for making her complaint to ER.  *Id.* ¶ 143.  Specifically, an ongoing discussion of possible transfer — which would have provided Skaf with opportunity for further advancement and promotion — was "abandon[ed]."  *Id.* ¶¶ 144-50.

In late March 2024, Skaf participated in planning a sit-in protest "demanding the cancellation of Project Nimbus, that Google address the harassment, intimidation, bullying, silencing, and censorship of Palestinian, Arab, Muslim employees and that Google address the mental health crisis among Google employees caused by Project Nimbus."  *Id.* ¶ 151.  The protest took place on April 16, 2024, in Google's offices in New York, Sunnyvale, and Seattle. *Id.* ¶¶ 154, 178.  In New York, Skaf and others sat on the 10th floor of Google's offices, where they "peacefully distributed leaflets" and "gave speeches" to oppose Project Nimbus and the harassment of Arab, Muslim, and Palestinian employees.  *Id.* ¶¶ 159, 167-70; *see also id.* ¶ 155 (demanding that "Google leadership immediately halt its continuous empowerment of hate, abuse, and retaliation against those who speak out and establish a working environment where Muslim, Arab, and Palestinian Googlers are not subject to harassment, racism, and collusion against them").  Other employees "harassed and filmed" Skaf and her fellow protestors.  *Id.* ¶ 171.  That conduct violated Google's Code of Conduct, but the employees who engaged in it were not disciplined by Google in any way.  *Id.* ¶ 172.

At some point, Google security appeared at the protest. *Id.* ¶ 173. Skaf and the other organizers "constructively engaged with them, quieting the protest, [and] ensuring that they were not blocking the lounge or disturbing others using the space." *Id.* Eventually, Google security threatened to call the police, at which point Skaf ended her protest and left. *Id.* Later that evening, Google put Skaf on administrative leave. *Id.* ¶¶ 175-76. The next day, Google terminated Skaf's employment, explaining that a review of her conduct on April 16, 2024, determined that she had violated Google's workplace policies. *Id.* ¶¶ 177-78. Skaf was one of fifty Google employees terminated after participating in the April 16, 2024 protest. *Id.* ¶ 178.

This lawsuit followed. In it, Skaf brings the following claims: discrimination and hostile work environment claims under the NYCHRL (Count 2); wrongful termination claims under the NYCHRL and Title VII (Counts 1, 5); disparate pay and failure-to-promote claims based on race and gender under the NYCHRL and NYLL (Counts 3, 4, 6, 7, 9, 10); a retaliation claim premised on the failure to transfer, in violation of the NYCHRL (Count 8); and retaliation for reporting unlawful activity, in violation of the NYLL (Count 11). *Id.* at 32-39.

## LEGAL STANDARDS

Google moves to dismiss pursuant to Rule 12(b)(6). In evaluating that motion, the Court must accept all facts set forth in the Complaint as true and draw all reasonable inferences in Skaf's favor. *See, e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) (per curiam). A claim will survive a Rule 12(b)(6) motion, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550

U.S. at 556). A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, and cannot rely on mere "labels and conclusions" to support a claim, *Twombly*, 550 U.S. at 555. If the plaintiff's pleadings "have not nudged [his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Id.* at 570. Where, as here, a plaintiff brings claims of employment discrimination, however, "[t]he facts required by *Iqbal* to be alleged in the complaint need not give plausible support to the ultimate question of whether the adverse employment action was attributable to discrimination. They need only give plausible support to a minimal inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 86-87 (2d Cir. 2015).

## DISCUSSION

Google moves to dismiss all of Skaf's claims other than her gender discrimination claims under the NYCHRL (Counts 4, 7). *See* ECF No. 28 ("Def.'s Mem."), at 1. The Court will address each type of claim in turn, beginning with her discrimination and hostile work environment claim under the NYCHRL.

## A. Discrimination and Hostile Work Environment Under the NYCHRL (Count 2)

To state a discrimination or hostile work environment claim under the NYCHRL, a plaintiff must show that she was "treated less well than other employees *because of*" her membership in a protected class. *Ardigo v. J. Christopher Cap., LLC*, No. 12-CV-3627 (JMF), 2013 WL 1195117, at *4 (S.D.N.Y. Mar. 25, 2013) (emphasis added) (quoting *Williams v. New York City Hous. Auth.*, 872 N.Y.S.2d 27, 39 (N.Y. App. Div. 2009)); *see also Mihalik v. Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 & n.8 (2d Cir. 2013). Prevailing on a claim under the NYCHRL, therefore, "requires a showing of some evidence from which [racial]

discrimination can be inferred." *Lugo v. City of New York*, 518 F. App'x 28, 30 (2d Cir. 2013) (summary order). Thus, to state a claim under the NYCHRL, Skaf must plausibly allege that she was treated less well than other employees because she is Arab; it is not enough to show that she was treated less well than other employees because of her views on the Israeli-Palestinian conflict or how she chose to express those views. *See, e.g.*, *Lax v. City Univ. of New York*, Index No. 504682/2021, 2024 WL 3449207, at *4 (N.Y. Sup. Ct. 2024); *Kopmar v. Ass'n of Legal Aid Attys.*, No. 24-CV-5158 (JPO), 2025 WL 1939048, at *6 (S.D.N.Y. July 15, 2025); *Gartenberg v. Cooper Union for the Advancement of Sci. & Art*, 765 F. Supp. 3d 245, 270-71 (S.D.N.Y. 2025); *see also Canel v. Art Inst. of Chicago*, No. 23 CV 17064, 2025 WL 564504, at *10 (N.D. Ill. Feb. 20, 2025) (holding that the slogan "Free Palestine" did not "cross[ ] the line from political criticism of the Israeli government to . . . harassment of plaintiff on the ground of her Jewish or Israeli identity").

The decisions in *Kopmar* and *Gartenberg* are instructive. *Kopmar* involved a retaliation claim that turned on whether a state-court lawsuit challenging a union resolution that the plaintiffs characterized as a "diatribe against Israel" stated discrimination claims under federal, state, or local law. 2025 WL 1939048, at *2, 6. Although the resolution had used "intense and provocative rhetoric, including referring to Israel's policies in Gaza as 'a state of siege,' 'a colonial apartheid occupation,' 'ethnic cleansing,' and 'genocide,'" the court concluded that it did not. *Id*. at *6. The resolution, the court reasoned, "criticize[d] a series of policies with which its drafters disagree[d]. While it grapple[d] with an admittedly charged political issue, it neither identifie[d] nor target[ed] any individual or group on the basis of race, ethnicity, religion, or nationality." *Id.* In *Gartenberg*, by contrast, the court held that the plaintiff did state a hostile environment claim because the speech and conduct upon which it was based had "go[ne] beyond

8

mere criticism of Israeli government policy or of Zionist ideology, and instead sen[t] a message that Jews as a class do not belong in Israel while justifying and encouraging violence against those Jews who do live there."  765 F. Supp. 3d at 268.  The court cited, among other allegations, that anti-Israeli slogans were "graffiti[ed] on a bathroom stall in lettering made to resemble the stylized font commonly associated with Hitler's *Mein Kampf*" and that "similar slogans" had been directed "at Jewish students . . . who were wearing visibly Jewish attire."  *Id.* at 269.

Measured against these standards, Skaf's Complaint fails to allege a plausible hostile work environment or discrimination claim under the NYCHRL.  Put simply, it contains no non-conclusory allegations that Google treated Skaf "less well" on account of her race or ethnicity — as opposed to her political beliefs.  *See, e.g.*, *Ward v. Cohen Media Publ'ns LLC*, No. 22-CV-6431, 2023 WL 5353342, at *15 (S.D.N.Y. Aug. 21, 2023) ("[E]ven under the more lenient requirements of the NYCHRL, plaintiff's claims must be more than conclusory or speculative to survive a motion to dismiss." (cleaned up)).  For instance, Skaf points to the ICMT's supposedly one-sided enforcement of Google's Community Guidelines as evidence of Google's bias against Arabs.  See FAC ¶¶ 70-76, 86-93.  But she herself provides a non-discriminatory explanation for the alleged differential treatment (namely, that the "Israel will prevail" meme was posted before the Community Guidelines were amended and was "grandfathered in").  *See id.* ¶ 76.  And in any event, the decision to favor posts on one side of a hot-button political debate does not support an inference of discrimination on the basis of race or ethnicity.  *See, e.g.*, *Gartenberg*, 765 F. Supp. 3d at 270-71.  Skaf points also to the fact that she was doxxed — and Google's tepid response to it — as evidence of discrimination.  *See* FAC ¶¶ 116-20.  But Skaf tacitly acknowledges that other employees who were doxxed were not Arab, *see id.* ¶ 120, undermining any inference that either the doxxing or Google's response was based on her ethnicity.

9

At bottom, Skaf's discrimination claim is based on conflating opposition to her political views with opposition to her as an Arab. Yet she herself implicitly acknowledges that the two are separable when she insists that "criticism of the Israeli government [sic] actions" is not "anti-Semitism." *Id.* ¶ 118. Set allegations regarding Skaf's political beliefs to the side, what remains is too little to support an inference of discrimination under the NYCHRL. The few allegedly racialized comments Skaf alleges, *see, e.g.*, *id.* ¶ 89 (alleging that an employee asked on an internal messaging platform "why Palestinians bothered to have children"), were neither directed at her nor attributable to Google. *See, e.g.*, *Del Villar v. Hyatt Hotel Corp.*, 2022 WL 2316205, at *5 (S.D.N.Y. June 28, 2022) ("[A]n employer will be held liable under the NYCHRL for the discriminatory acts of nonsupervisory co-workers only if 'the employer knew of the employee's or agent's discriminatory conduct, and acquiesced in such conduct or failed to take immediate and appropriate corrective action.'" (cleaned up)). Nor do they, even taken together, plausibly support the conclusion that Google treated Skaf less well because of her race. *See, e.g.*, *Williams v. N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 80 (N.Y. App. Div. 2009) (noting that actionable conduct must amount to more than "petty slights and trivial inconveniences"); *see also Ardigo* 2013 WL 1195117, at *3, 4-5 (holding that "three mildly offensive statements" from the defendants over a "period of several months" fell short of stating a plausible claim of harassment).

In short, Google's motion to dismiss Skaf's discrimination and hostile work environment claim under the NYCHRL must be and is GRANTED.

## B. Retaliation in the Form of Termination (Counts 1 and 5)

Next, Skaf brings retaliation claims under Title VII and the NYCHRL, alleging that she was unlawfully terminated for engaging in protected activity — namely, for filing the March 2024 ER complaint and for participating in the April 16, 2024 protest. *See* FAC ¶¶ 207, 219. To

10

establish retaliation in violation of Title VII or the NYCHRL requires evidence of, among other things, "participation in a protected activity" and "a causal connection between the protected activity and [an] adverse employment action." *Sabic-El-Rayess v. Tchrs. Coll., Columbia Univ.*, 758 F. Supp. 3d 268, 279-80 (S.D.N.Y. 2024) (internal quotation marks omitted).[2] To constitute protected activity under either statute, the conduct must "oppose[] or challenge[] something prohibited by that statute." *Kopmar*, 2025 WL 1939048, at *3 (citations omitted). Significantly, however, a plaintiff "need not show that the behavior [she] opposed in fact violated [the statute]"; it is enough to "show that [she] possessed a good faith, reasonable belief that the employer's conduct qualified as an unlawful employment practice under the statute." *Cooper v. N.Y. State Dep't of Labor*, 819 F.3d 678, 680-81 (2d Cir. 2016). "Protected activity" includes protests, *see, e.g.*, *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), but "not all forms of protest are protected," *Matima v. Celli*, 228 F.3d 68, 79 (2d Cir. 2000) (applying Title VII). As the Second Circuit has held, for instance, "insubordination and conduct that disrupts the workplace are legitimate reasons for firing an employee." *Id.* (cleaned up).

Google argues that the April 16, 2024 protest — after which Skaf was terminated — did not constitute protected activity for two reasons: because Skaf and her colleagues were protesting a political issue, not discrimination, and because the protest was disruptive. *See* Def's Mem. 14-15. Those arguments are not without force and may ultimately carry the day, but — assuming the truth of the allegations in the Complaint and drawing all inferences in Skaf's favor, as the Court must — they do not warrant dismissal at this stage. As to Google's first point, the

---

[2]    The elements of a retaliation claim under Title VII and NYCHRL differ in one respect not relevant here: "Under the NYCHRL . . . the plaintiff need not prove any adverse employment action; instead, he must prove that something happened that would be reasonably likely to deter a person from engaging in protected activity." *Jimenez v. City of N.Y.*, 605 F. Supp. 2d 485, 528 (S.D.N.Y. 2009) (cleaned up).

Complaint explicitly alleges that the protest was an effort to oppose not only Project Nimbus, but also the "harassment, intimidation, bullying, silencing, and censorship of Palestinian, Arab, and Muslim Googlers." FAC ¶¶ 156, 159-61. And while the Complaint does not plausibly allege that Skaf was treated differently on account of her race or ethnicity, as opposed to her political views, it does plausibly allege that she and her fellow protestors "possessed a good faith, reasonable belief that the employer's conduct qualified as an unlawful employment practice" under Title VII and the NYCHRL. *Cooper*, 819 F.3d at 680-81; *see* FAC ¶¶ 89, 100, 106, 128. As to Google's second point, the Complaint explicitly alleges that the protestors were "peaceful," took steps to minimize disruptions to others, and complied with Google security's directives. *See id.* ¶¶ 169-70, 173. In light of those allegations, the Court cannot say as a matter of law that the protest was too "disruptive or unreasonable" to warrant protection. *Matima*, 228 F.3d at 79; *see Anderson v. Google LLC*, No. 5:25-CV-03268-BLF, 2025 WL 2691138, at *2 (N.D. Cal. Sept. 18, 2025) (denying a motion to dismiss a Title VII retaliation claim based on the April 16, 2024 protest, explaining "additional factual development is required" to assess Google's argument that the protest was too disruptive to be protected (cleaned up)).

For these reasons, Google's motion to dismiss Skaf's retaliatory termination claim must be and is DENIED. The Court need not and does not reach Google's argument that Skaf fails to allege a causal connection between her ER complaint and her termination. *See* Def.'s Mem. 17.

## C. Retaliation in the Form of a Failure to Transfer (Count 8)

Skaf's claim — that she was denied a transfer in retaliation for engaging in protected activity, in violation of the NYCHRL — warrants little discussion. Under the NYCHRL, to establish an adverse action requires evidence that the employer took some action to treat the plaintiff worse, in a nontrivial way, because of her protected activity. *See, e.g., Varughese v.*

*Mount Sinai Med. Ctr.*, No. 12-CV-8812 (CM) (JCF), 2015 WL 1499618, at *44 (S.D.N.Y. Mar. 27, 2015), *aff'd*, 693 F. App'x 41 (2d Cir. 2017) (summary order).  For a transfer denial to constitute an adverse action, a plaintiff must have actually requested, and been denied, a transfer. *See Bowen-Hooks v. City of New York*, 13 F. Supp. 3d 179, 215, 225-26 (E.D.N.Y. 2014) (denying a retaliation claim because the plaintiff had "not shown that she requested and was denied a transfer request"); *see also Beyer v. Cnty. of Nassau*, 524 F.3d 160, 166 (2d Cir. 2008) ("An employee has established the adverse employment action . . . when she has proffered evidence . . . that the transfer *sought and denied* would have involved an objective and significant improvement in the terms, conditions, or privileges of her employment" (emphasis added) (cleaned up)).[3]  Here, Skaf fails to plead that she ever requested, let alone was denied, a transfer.  Instead, she alleges only that she was invited to apply for a transfer in January 2023, FAC ¶ 63(1); that she discussed the "possibility" of a transfer with a supervisor in January 2024, *id.* ¶¶ 144, 148; and that she never again heard about transfer, *id.* ¶ 147.  In her opposition, Skaf asserts that transfers at Google "are done only once the current and possibly future managers sign off" and that her "conversation with both of these managers amounted to her application." ECF No. 32 ("Pl.'s Mem."), at 13.  But these allegations do not appear in the Complaint and, thus, must be disregarded.  *See, e.g.*, *Rodriguez v. Goetz,* 09-CV-3728 (LAP), 2010 WL 451032, at *1 n.1 (S.D.N.Y. Feb. 1, 2010) ("A plaintiff may not amend [her] complaint through [her]

---

[3]     *Bowen-Hooks* and *Beyer* involved claims under Title VII, not the NYCHRL, which "has a more lenient definition of what constitutes an adverse action for purposes of establishing *a prima facie* case of discrimination than federal law has." *Varughese v. Mount Sinai Med. Ctr.*, No. 12-CV-8812 (CM) (JCF), 2015 WL 1499618, at *44 (S.D.N.Y. Mar. 27, 2015), *aff'd,* 693 F. App'x 41 (2d Cir. 2017).  That said, Skaf does not argue, let alone cite case law demonstrating, that a plaintiff can state a retaliatory transfer under the NYCHRL without alleging that she applied for, and was denied, a transfer. *See generally* ECF No. 32 ("Pl.'s Mem."), at 12-13.

opposition." (cleaned up)).  Accordingly, Skaf's retaliatory transfer claim under the NYCHRL must be and is DISMISSED for failure to allege an adverse action.

### D.  Disparate Pay Claims Under NYLL § 194 and the NYCHRL (Counts 3, 9, and 10)

Next, Skaf alleges that she was paid less because of her gender and ethnicity, in violation of both the New York Equal Pay Act, NYLL § 194 ("NYEPA") and the NYCHRL.  Google does not move to dismiss Skaf's claim that she was paid less because of her gender in violation of the NYCHRL (Count 4), but does move to dismiss the other claims (Counts 3, 9, and 10).

To establish a violation of NYEPA, a plaintiff must show that "(1) the employer pays different wages to employees [outside the protected class]; (2) the employees perform equal work on jobs requiring equal skill, effort, and responsibility; and (3) the jobs are performed under similar working conditions." *Talwar v. Staten Island Univ. Hosp.*, 610 F. App'x 28, 30 (2d Cir. 2015).  A plaintiff "need not demonstrate that [his] job is identical to a higher paid position, but only must show that the two positions are substantially equal in skill, effort, and responsibility." *Lavin-McEleney v. Marist Coll.*, 239 F.3d 476, 480 (2d Cir. 2001) (internal quotation marks omitted).  Measured against these standards, Skaf's NYEPA claims — which are premised on the theory that she was performing the work of an L7 employee, but being paid the salary of a L6 employee, *see* FAC ¶¶ 55-61 — are sufficient to survive Google's motion to dismiss.  The Complaint identifies at least three non-Arab and non-female colleagues who performed "substantially similar work, when viewed as a composite of skill, effort, and responsibility, and performed under similar working conditions."  NYLL § 194(b); *see* FAC ¶¶ 37-40.  It further alleges that she and her comparators were all "Uber Tech Leads" who "maintain[ed] backend infrastructure, applications, and frontend webpages," FAC ¶ 35, and managed other teams, *id.* ¶ 31; *id.* ¶¶ 48-51 (describing how her work diverged from the L6 role).

14

On top of that, the Complaint alleges that Skaf's supervisor "repeatedly told [her] that she was performing the role of an L7 and was mis-levelled." *Id.* ¶ 56.  Taken together, these allegations are sufficient to state a claim.  *See, e.g.*, *Isbell v. City of N.Y.*, 316 F. Supp. 3d 571, 589 (S.D.N.Y. 2018) (holding that identification of a single comparator suffices at the pleading stage).  Accordingly, the motion to dismiss Skaf's NYEPA claims is DENIED.

For similar reasons, Skaf's claim that she was paid less because of her ethnicity in violation of the NYCHRL survives.  To establish a *prima facie* case of discrimination under the NYCHRL, a plaintiff must show that: (1) she was a member of a protected class; (2) she was competent to perform the job in question, or was performing the job duties satisfactorily; (3) she was subjected to "differential treatment that is more than trivial, insubstantial, or petty"; and (4) the action occurred under circumstances that give rise to a minimal inference of discrimination.  *Torre v. Charter Commc'ns, Inc.*, 493 F. Supp. 3d 276, 285 (S.D.N.Y. 2020) (internal quotation marks omitted).  Skaf plainly satisfies the first two prongs of this test, and the pay differential alone fulfils the third.  *See id.*  And between the Complaint's allegation that another "qualified Arab" was denied a promotion, FAC ¶ 66(1), and its identification of three non-Arab comparators who were classified as L7 and thus paid more, despite doing similar work, she offers enough for now to satisfy "her 'minimal burden' of alleging facts 'suggesting an inference of discriminatory motivation.'"  *Torre*, 493 F. Supp. 3d at 285 (quoting *Vega*, 801 F.3d at 85); *accord Santiago v. ACACIA Network, Inc.*, 634 F. Supp. 3d 143, 155 (S.D.N.Y. 2022).  Thus, the motion to dismiss Skaf's disparate pay claim under the NYCHRL is also DENIED.

## E.  Failure to Promote Under the NYCHRL (Count 6)

Skaf also alleges that she was denied a promotion on the basis of her Arab ethnicity in violation of the NYCHRL.  *See* FAC ¶¶ 221-23.  Specifically, Skaf alleges that her manager,

15

Dave Mandelbaum, caused her to be denied promotion a promotion to L7 based on her Arab ethnicity. *See id.* ¶¶ 55-61(1), 65(1)-66(1), 60(2)-61(2). But as with her hostile work environment claim, Skaf does not plausibly allege facts suggesting she was "subjected to unequal treatment because of her protected characteristic." *Wilson*, 2021 WL 918770, at \*6. Skaf asserts, "[u]pon information and belief," that Mandelbaum "did not support her promotion . . . due to her Arab ethnicity," FAC ¶ 59, but the only fact she alleges to support that this conclusory assertion is that, in 2022, "upon information and belief," Mandelbaum "used his position on a promotion committee to veto [another] qualified Arab candidate's promotion," *id.* ¶ 66(1). This allegation, however, is itself too vague and conclusory to support an inference that Mandelbaum harbored anti-Arab bias, let alone that he caused Skaf to be denied a promotion due to that bias. In the absence of other evidence — such as biased remarks by Mandelbaum or the promotion of non-Arab comparators — Skaf's claim fails as a matter of law and must be DISMISSED.

## F.  Whistleblower Relation Claim under NYLL § 740 (Count 11)

That leaves only Skaf's whistleblower retaliation claim under NYLL § 740, which prohibits "[a]n employer" from taking "any retaliatory action against an employee . . . because the employee . . . discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of law, rule or regulation." N.Y. Lab. L. § 740(2). To state a claim under this provision, "a plaintiff must plead: (1) activity protected by the statute; (2) retaliatory action; and (3) some causal connection between the protected activity and the adverse action." *Callahan v. HSBC Sec. (USA) Inc.*, 723 F. Supp. 3d 315, 326 (S.D.N.Y. 2024). Significantly, to qualify as protected activity, a complaint must be based on a "reasonabl[e]" belief that the employer is violating a law, rule, or regulation. *Id.* That standard "contains both subjective and objective components.

16

That is, plaintiff must show not only that he believed that the conduct constituted a violation, but also that a reasonable person in his position would have believed that the conduct constituted a violation." *Id.* at 323.  The employee "need not specify the actual law, rule or regulation violated when making a complaint to a supervisor, [but] she must identify the particular activities, policies or practices in which the employer allegedly engaged, so that the complaint provides the employer with notice of the alleged complained-of conduct." *Thacker v. HSBC Bank USA, N.A.*, No. 1:22-CV-7120-GHW, 2023 WL 3061336, at *8 (S.D.N.Y. Apr. 24, 2023) (cleaned up).  Moreover, the employee must disclose, or threaten to disclose, that a policy or practice actually violates the law; it is not enough, for example, to say that the conduct is "legally dubious." *Id.*

In light of these standards, Skaf's claim fails for two reasons.  First, she fails to plausibly allege that her complaints about Project Nimbus were based on a reasonable belief that Google, her employer, was violating the law.  She contends that she was protesting violations of the U.N. Genocide Convention and the Proxmire Act, a U.S. law that prohibits genocide (and incitement to commit genocide).  *See* FAC ¶¶ 198-204.[4]  But both define genocide as "a specific intent crime." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 739 (9th Cir. 2008); *see* 18 U.S.C. § 1091(a); Convention on the Prevention and Punishment of the Crime of Genocide art. II, Dec. 9, 1948, 78 U.N.T.S. 277 ("Genocide Convention").  And the Complaint is devoid of any allegations indicating that Skaf believed — let alone reasonably believed — that *Google* had the requisite specific intent.[5]  Nor is it enough to suggest, as Skaf does, that she accused Google of

---

[4]    Google argues that a Section 740 claim cannot be based on a complaint that the employer violated non-domestic law, such as the U.N. Genocide Convention.  Def.'s Mem. 18.  The Court need not and does not decide that question, as Skaf's claim fails either way.

[5]    Whether it is reasonable to believe that Israel (or Hamas, for that matter) has committed genocide is a deeply contested question upon which the Court need not and does not opine here.

complicity in, or aiding and abetting, genocide.  *See* Pl.'s Mem. 16, 18.  Aiding and abetting

liability also attaches only if the perpetrator possesses "the intent of facilitating the offense's

commission."  *Rosemond v. United States*, 572 U.S. 65, 71 (2014).  And while the U.N.

Genocide Convention (unlike the Proxmire Act) does prohibit complicity in genocide, *see*

Genocide Convention, art. III(e), Google itself is not a party to the Convention.  In short, Skaf

fails to plausibly allege that she conveyed a reasonable belief that Google was violating the law.

Second, and in any event, Skaf fails to allege that she put Google on notice that she

believed it was violating the law.  *See, e.g.*, *Thacker*, 2023 WL 3061336, at *8; *Webb-Weber v.

Cmty. Action for Hum. Servs., Inc.*, 23 N.Y.3d 448, 453 (2014).  To be sure, Skaf repeatedly

protested Project Nimbus.  But she never communicated a belief that Project Nimbus was

actually "illegal."  *Thacker*, No. 1:22-CV-7120-GHW, 2023 WL 3061336, at *8.  The April 16,

2024 sit-in, for example, merely demanded that Google "Drop Project Nimbus."  FAC ¶ 156.

And while Skaf posted a question on an internal message board asking whether Google should

cancel Project Nimbus "[t]o avoid complicity in war crimes & respect its principles," *id.* ¶ 107;

*see* Pl.'s Mem. 19-20, that does not constitute a disclosure of (or a threat to disclose) a belief that

Google was actually violating the law.  Skaf posed the *question* whether Project Nimbus made

Google complicit in war crimes.  That is closer to a contention that Google's conduct was

"legally dubious" than it is to a contention that Google was actually violating the law.  *See*

*Thacker*, 2023 WL 3061336, at *8 (dismissing a Section 740 claim based on the fact that the

employee had reported conduct that she believed to be "legally dubious").  On top of that, the

---

That is because the dispositive question for purposes of Skaf's Section 740 claim is whether her
protest was based on a reasonable belief that *Google*, her employer, was violating the law.

Complaint contains no allegations indicating that the internal post was directed to a Google supervisor or a public body, as Section 740 requires.

In sum, Skaf's whistleblower claim must be and is DISMISSED.

**CONCLUSION**

For the foregoing reasons, Google's motion to dismiss is GRANTED with respect to Counts 2, 6, 8, 11 and DENIED with respect to Counts 1, 3, 5, 9, and 10.

That raises the question of whether leave to amend the dismissed claims should be granted. Leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), but "it is within the sound discretion of the district court to grant or deny leave to amend," *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). Here, the Court concludes that Skaf should be granted leave to amend Count 8 — her retaliation claim premised on failure to transfer. Given Skaf's representations in her memorandum of law, *see* Pl.'s Mem. 13, "it is possible that [she] can plead additional facts to remedy the deficiencies identified in this opinion without prejudice to Defendant[]." *Lipow v. Net1 UEPS Techs., Inc.*, 131 F. Supp. 3d 144, 174 (S.D.N.Y. 2015). By contrast, the Court declines to grant leave to amend to revive the rest of Skaf's dismissed claims because the problems with them are substantive. *See, e.g.*, *Roundtree v. NYC*, No. 19-CV-2475 (JMF), 2021 WL 1667193, at *6 (S.D.N.Y. Apr. 28, 2021) (collecting cases). Moreover, Skaf does not seek leave to amend or state that she is in possession of facts that would cure the problems with those claims. *See, e.g.*, *Clark v. Kitt*, No. 12-CV-8061 (CS), 2014 WL 4054284, at *15 (S.D.N.Y. Aug. 15, 2014); *accord TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505-06 (2d Cir. 2014). And the Court granted Skaf leave to amend in response to Google's motion to dismiss and explicitly warned that she would "not be given any further opportunity to amend the complaint to address issues

19

raised by the motion to dismiss." ECF No. 22; *see, e.g., Transeo S.A.R.L. v. Bessemer Venture Partners VI L.P.*, 936 F. Supp. 2d 376, 415 (S.D.N.Y. 2013).

Skaf shall file any amended complaint consistent with this Opinion and Order no later than **August 12, 2026**. Unless and until the Court orders otherwise, Google shall file its answer by **the earlier of September 2, 2026**, or **three weeks after Skaf files an amended complaint**. In addition, the initial pretrial conference, previously adjourned, is hereby reinstated and RESCHEDULED for **September 10, 2026**, at **9:00 a.m.** To access the conference, counsel should call the Court's dedicated conference call line at (855) 244-8681 and use access code 2303 019 3884, followed by the pound (#) key. When prompted for an attendee ID number, press the pound (#) key again. The parties are reminded to follow the procedures for telephone conferences described in the Court's Individual Rules and Practices for Civil Cases, which are available at https://nysd.uscourts.gov/hon-jesse-m-furman, including Rule 3(B)(i), which requires the parties, no later than twenty-four hours before the conference, to send a joint email to the Court with the names and honorifics (e.g., Mr., Ms., Dr., etc.) of counsel who may speak during the conference and the telephone numbers from which counsel expect to join the call. The parties are reminded that, no later than the **Thursday before the conference**, they must submit a joint status letter and proposed Case Management Plan. *See* ECF No. 6.

The Clerk of Court is directed to terminate ECF No. 27.

SO ORDERED.

Dated: July 29, 2026
New York, New York

JESSE M. FURMAN
United States District Judge

20