**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
____________________________________x

JOELLE SKAF,

Plaintiff,

v.

GOOGLE, LLC,

Defendant.

____________________________________x

Index No.: 1:25-cv-06029-JMF

**MOTION FOR REHEARING AND RECONSIDERATION**

**JURY TRIAL DEMANDED**

## MEMO OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR REHEARING AND RECONSIDERATION

## INTRODUCTION

Plaintiff, Joelle Skaf, by and through her attorneys moves this court pursuant to Local Rule 6.3 to rehear and reconsider its decision of July 29, 2026 with respect to the dismissal of Plaintiff's whistleblower claim under NYLL 740. For the reasons stated below, Plaintiff requests this Court reverse its decision and reinstate the NYLL 740 claim. That is 1. In analyzing the reasonableness of Plaintiff's belief that Google was *complicit in genocide* and violating of the U.N. Genocide Convention and the Proxmire Act, the court's holding that Plaintiff failed to show a reasonable belief as to Google's "specific intent" *to commit genocide* was clearly erroneous. As set forth below, specific intent is not required to support a reasonable belief regarding c*omplicity in genocide* under the applicable laws, as Plaintiff alleges; and 2. The court in holding that Plaintiff failed to put Google on notice that it was violating laws against complicity in genocide and rather

merely questioned Google's practice as "legally dubious," or in any event that her protest was not directed to a Google supervisor or a public body, are also clearly erroneous in light of the applicable law and the pleadings.

**THE COURT'S DECISION ON NYLL 740 CLAIM**

In assessing Plaintiff's NYLL 740 claim, this court held as follows:

> "First, she fails to plausibly allege that her complaints about Project Nimbus were based on a reasonable belief that Google, her employer, was violating the law. She contends that she was protesting violations of the U.N. Genocide Convention and the Proxmire Act, a U.S. law that prohibits genocide (and incitement to commit genocide). See FAC ¶¶ 198-204. But both define genocide as "a specific intent crime." *Abagninin v. AMVAC Chem. Corp.*, 545 F.3d 733, 739 (9th Cir. 2008); see 18 U.S.C. § 1091(a); Convention on the Prevention and Punishment of the Crime of Genocide art. II, Dec. 9, 1948, 78 U.N.T.S. 277 ("Genocide Convention"). And the Complaint is devoid of any allegations indicating that Skaf believed — let alone reasonably believed — that Google had the requisite specific intent. Nor is it enough to suggest, as Skaf does, that she accused Google of complicity in, or aiding and abetting genocide. *See* Pl.'s Mem. 16, 18. Aiding and abetting liability also attaches only if the perpetrator possesses "the intent of facilitating the offense's commission." *Rosemond v. United States*, 572 U.S. 65, 71 (2014). And while the U.N. Genocide Convention (unlike the Proxmire Act) does prohibit complicity in genocide, see Genocide Convention, art. III(e), Google itself is not a party to the Convention. In short, Skaf fails to plausibly allege that she conveyed a reasonable belief that Google was violating the law.

> Second, and in any event, Skaf fails to allege that she put Google on notice that she believed it was violating the law. See, e.g., *Thacker,* 2023 WL 3061336, at *8; *Webb-Weber v. Cmty. Action for Hum. Servs., Inc.,* 23 N.Y.3d 448, 453 (2014). To be sure, Skaf repeatedly protested Project Nimbus. But she never communicated a belief that Project Nimbus was actually "illegal." Thacker, No. 1:22-CV-7120-GHW, 2023 WL 3061336, at *8. The April 16, 2024 sit-in, for example, merely demanded that Google "Drop Project Nimbus." FAC ¶ 156. And while Skaf posted a question on an internal message board asking whether Google should cancel Project Nimbus "[t]o avoid complicity in war crimes & respect its principles," id. ¶ 107; see Pl.'s Mem. 19-20, that does not constitute a disclosure of (or a threat to disclose) a belief that Google was actually violating the law. Skaf posed the question whether Project Nimbus made Google complicit in war crimes. That is closer to a contention that Google's conduct was "legally dubious" than it is to a contention that Google was actually violating the law. See Thacker, 2023 WL 3061336, at *8 (dismissing

> a Section 740 claim based on the fact that the employee had reported conduct that she believed to be "legally dubious"). On top of that, the Complaint contains no allegations indicating that the internal post was directed to a Google supervisor or a public body, as Section 740 requires." [Decision on Motion to Dismiss, Dkt # 35, pages 17-18]

Both as to reasonable belief and notice, the Court overlooked several allegations and law supporting Plaintiff's claim which Plaintiff contends amount to clear legal error.

**LEGAL STANDARD**

Plaintiff recognizes that the standard for reconsideration is very strict and exacting. Typically, "a party moving for reconsideration to "set[] forth concisely the matters or controlling decisions which the moving party believes the court has overlooked." (emphasis added) *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir.1995) (emphasis added).*United States ex rel. Omni Healthcare, Inc. v. McKesson Corp.,* 2026 U.S. Dist. LEXIS 14859, *4 Courts should grant reconsideration "only when the movant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc.*, 970 F.3d 133, 142-43 (2d Cir. 2020).1. See *Kelly v. LCL Constr. Servs. LLC,* 2025 U.S. Dist. LEXIS 123067, *4-5.

**ARGUMENT**

**I. The Purpose Of NYLL 740 Is To Encourage Employees To Raise Concerns Perceived Employer Actions And To Protect Them Against Retaliation For So Doing; Under The 2022 Amendments A Plaintiff In A 740 Claim Has To Show A Reasonable Belief That The Law Was Violated To Be Protected By The Act**

Section 740 of the New York Labor Law is designed to protect and encourage persons who believe their employers are violating the law to come forward without fear of reprisal. By NYLL 740 the legislature understood that whistleblowers should be protected from retaliation just as others who engage in protected activity. The legislature recognized that employees who

complain their rights are being violated or that their employer is engaged in illegal activities are potentially subject to reprisal as such complaints or accusations are usually not welcome. This is why the statutes protect against retaliation. It is in this context that Plaintiff's Section NYLL 740 claim arose.

The 2022 amendments to the NYLL 740 provided further protection to Whistleblowers in that the law was no longer tied only to issues of threats to health and safety, and required only that the whistleblower have a reasonable belief that her employer was violating the law even if they were mistaken as to whether a violation actually exists, and as such, there is no need for the whistleblower to prove that the law was actually violated. What is at issue is the Plaintiff's reasonable belief. As applied here, the law does not require there to be a finding that the Israeli government has committed genocide in Gaza, for plaintiff to be protected for raising the accusation that Google was being complicit with genocide through its Project Nimbus.

That is, NYLL 740 claimants are not required to prove an actual violation of law. In this case Plaintiff's reasonable belief (as set forth *inter alia* in FAC paras 26, 91, 93, 96, 108, 109, 120, 121, 131, 137, 158, 167 and 193 ) that an actual genocide by Israel was taking place against the Palestinians in Gaza after the October 7, 2023 Hamas attacks was sufficient without having to prove the actual commission of genocide. Nonetheless, Plaintiff in substantiating the reasonableness of her belief that *Google was complicit* in genocide discussed Israel's plausible commission of genocide as a predicate to Google's complicity with such genocide. See FAC 244 stating:

> Plaintiff reasonably believed that Defendant was engaging conduct which violated the law regarding **complicity with genocide** as many international organizations including the International Court of Justice in January 2024 ruled in the case brought against Israel by

> South Africa, that a plausible case of genocide existed and required precautionary measures." [FAC 244, emphasis added].[1]

In discussing Google's acts (as opposed to Israel's), this court overlooked that **Plaintiff's claim was not that Google itself was committing genocide, rather that its cloud based services (provided pursant to Project Nimbus) were being provided by Google to assist the Israeli military to in its plausibly genocidal actions in Gaza against the Palestinian people. This assistance is a complicity claim under the Genocide Convention**. Plaintiff in her FAC clearly linked Project Nimbus to the Israeli government's plausible genocide by her citation to UN Special Rapporteur Francesca Albanese's report which described Project Nimbus and other cloud computing as "critical cloud and AI infrastructure [which….] In July 2024, an Israeli colonel described cloud tech as "a weapon in every sense of the word" [FAC 26]. That is these technologies were critical infrastructure supporting the Israeli government's plausibly genocidal military efforts and amounted effectively to military armament.

**III. The Court Committed Clear Error In Holding that Google needed to have Specific Intent to commit Genocide in Order for Her to Make Out a Claim under NYLL 740**

[1] See also January 26, 2024 ICJ Decision, paragraph 54 inter alia available at https://www.icj-cij.org/sites/default/files/case-related/192/192-20240126-ord-01-00-en.pdf (stating in relevant part "54. In the Court's view, the facts and circumstances mentioned above are sufficient to conclude that at least some of the rights claimed by South Africa and for which it is seeking protection are plausible. This is the case with respect to the right of the Palestinians in Gaza to be protected from acts of genocide and related prohibited acts identified in Article III, and the right of South Africa to seek Israel's compliance with the latter's obligations under the Convention.")

Plaintiff's claim was not that Google itself was committing genocide, but rather that its cloud based services (provided pursuant to Project Nimbus) were being provided by Google to assist the Israeli military to in its plausibly genocidal actions in Gaza against the Palestinian people. This assistance is a complicity claim under the Genocide Convention. However in assessing reasonable belief this court erroneously applied the specific intent standard applicable to commission of genocide, not the lower knowledge standard applicable to complicity violations. To do so was clearly in error. Plaintiff in her opposition to Defendants Motion to Dismiss makes the distinction clear at page 21 stating: "Plaintiff's case does not allege that Google, had or needed to have, the specific intent to destroy the Palestinian people, as required for a claim for genocide because complicity is a form of assistance which does not require a shared goal." [Dkt, # 32, page 21]

There is no doubt that commission of Genocide is a specific intent crime. However the standard for complicity in genocide or assisting in another committing genocide is knowledge that a genocide is or may be in progress and providing assistance to further it. That is, unless Plaintiff was accusing Google of the primary violation, that is that Google itself was committing genocide, the standard for complicity is not specific intent but knowledge that a such a crime may be in progress. In *S. African Apartheid Litig. v. Daimler AG,* 617 F. Supp. 2d 228, 260 the court addressed the intent requirement[2] for complicity in genocide head on, stating:

[2] *Daimler* refers to Article 25(3)(c) of the Rome Statute, which does not define a standalone or specific category of substantive crimes. Instead, it establishes individual criminal responsibility for anyone who aids, abets, or otherwise assists—including providing the means for—the commission or attempted commission of any core international crime under the jurisdiction of

"Thus even assuming that "*[f]or the purpose of* facilitating commission of such a crime" in Article 25(c) carries an intent requirement, within the context of the Rome Statute "intent" does not require that an aider or abettor share the primary actor's purpose. The *actions* must be taken intentionally: there is no liability for the provision of assistance under duress. But the aider or abettor may be held liable if he or she *is aware* that the assistance provided will substantially assist the commission of crimes in violation of the law of nations. The portion of the *mens rea* requirement related to the outcome -- rather than the act -- is in fact identical to the Rome Statute's definition of knowledge: "awareness that a circumstance exists or a consequence will occur in the ordinary course of events." Under the Rome Statute -- and under customary international law -- there is no difference between amorality and immorality. One who substantially assists a violator of the law of nations is equally liable if he or she desires the crime to occur or if he or she knows it will occur and simply does not care.

"Therefore, there are no applicable international legal materials requiring a finding of specific intent before imposing liability for aiding and abetting a violation of customary international law. As a result, I conclude that customary international law requires that an aider and abettor know that its actions will substantially assist the perpetrator in the commission of a crime or tort in violation of the law of nations." [Id. at 262.]

Accordingly, the court should not have required Plaintiff to show specific intent to establish her reasonable belief that Google was complicit in the Israeli government's plausible genocide by its Project Nimbus activities supporting the military activities in Gaza. See also *S. African Apartheid Litig. v. Daimler , supra* at 260 (distinguishing between intent requirements for the primary crime of genocide and the secondary action of aiding or abetting, i.e. being complicit, stating: "*Akayesu* expressly recognized the general rule that secondary liability for aiding and abetting under customary international law requires only knowledge of the crimes of the primary actor [not specific intent]."

---

the International Criminal Court. The crimes covered by this provision include Genocide. (Article 6)

Furthermore, the Court's reliance on *Rosemond v. United States,* 572 U.S. 65, 71 (2014) is misplaced. In *Rosemond,* the Defendant was convicted of use of a firearm in a drug trafficking case, 18 U.S.C. § 924(c). Rosemond claimed that he only knew he was participating in a drug deal, but denied knowledge that his confederate had a gun. The Supreme Court held that part of the crime charged required proof of prior knowledge that his confederate would carry or use a gun. Because the jury instruction left out proof of knowledge, the Court held the jury instruction was improper. This case does not stand for the proposition that "aiding and abetting liability also attaches only if the perpetrator possesses "the intent of facilitating the offense's commission." The intent in *Rosemond* was based on Rosemond's knowledge that his confederate had a firearm in order for him to be convicted of using a firearm in the context of drug trafficking. *Rosemond* did not have to share the intent to use a firearm, but he had to have knowledge. Moreover, *Rosemond* is entirely inapposite and this court should follow the standards set forth in *Daimler* with respect to the intent required under the applicable statutes.

Finally, it is not relevant that Google is not a "party" to the Genocide Convention. States are parties and the United States has ratified it. The Genocide Convention, like the Nuremberg Principles by its own terms apply to all actors, and can reach individual and corporate conduct. See FAC 195 and Opposition to Motion to Dismiss DKT # 32 pages 20 and 21 (regarding Nuremberg Principles announcement of individual liability for complicity in such crimes as war crimes and genocide.. As Plaintiff argued:

> Plaintiff knew the Nazi genocide required complicity. It required people who knew what was going on in the death camps to be silent, and those who were implementing orders to engage in the genocide to "follow orders.". Indeed, the

> Genocide Convention was written to address the horrors of the Holocaust. To prevent genocide people must speak up and be protected under the law to do so. The framers of the Nuremberg Principles and the Genocide convention, through imposing a duty to prevent genocide and individual responsibility for it were trying to prevent the silence that allowed the genocide to happen. (FACÅ˜Å˜ 106-107) Article III of the Genocide convention makes the following acts illegal and punishable: (a) Genocide; (b) Conspiracy to commit genocide; (c) Direct and public incitement to commit genocide; (d) Attempt to commit genocide; (e) Complicity in genocide. (FACÅ˜ 198) Plaintiff did not want to remain silent, and thus participated in the sit-in as mentioned. (FACÅ˜ 199). [Dkt # 32, page 20]

**IV. The Court Committed Clear Error In Finding In A 12 (b)(6) Motion That Plaintiff Failed To Allege A Plausible Claim That Plaintiff Communicated To Google's Management That She Believed That Google Was Complicit In Genocide Which Is Illegal**

Nor should Plaintiff's NYLL 740 claim be dismissed on grounds of notice. Plaintiff's complaint is clear that from the time Google agreed to enter into Project Nimbus she believed it violated Google's own AI principles which reference the requirement to comply with international law and norms. FAC 23. 192, 193. *See also,* MOL in Opposition, Dkt #32, pages 19-23. While Plaintiff had been protesting the violation of these principles, her claims changed after October 7, 2023 and the reaction of the Israeli government to the Hamas attacks. Plaintiff's complaint did not condone those attacks. Rather she turned her focus to the violations of international law and the genocide convention which the Israeli government's use of Google's Project Nimbus cloud - based technologies. While the Court held that Plaintiff's claim of "Drop Nimbus" did not amount to a protest of Google's complicity with genocide, and that she did not complain to a supervisor the clear language of the complaint makes clear that such determination was clearly erroneous:

> FAC 167 states: Plaintiff identified herself supporting the protest by wearing a t-shirt which had "Googler against Genocide" on the front and "Drop Project Nimbus" on the back. Everyone participating in the protest wore that t-shirt. Plaintiff and her fellow protesters by their protest were thus engaging in

> protected activity regarding racial/ethnic, religious harassment they and others suffered; they were raising protests of worker safety, and violations of the Genocide Convention and other international and domestic law by their protest action and related communications.

Further FAC 157 states: “The photo [a pictures photo] shows the demands stated in the office of Thomas Kurian, CEO of Google Cloud, placed there by the peaceful protesters. That is, the protesters who took over the CEO’s office peacefully attired in shirts stating” Googler against Genocide” /“Drop Project Nimbus” clearly meet the notice standard. As FAC 158 states “This sit in was the most visible national protest of anti-Arab, Palestinian and Muslim harassment at Google, as well as the most visible national protest of Google’s complicity in genocide within the company.”

This national protest resulted in the firing of all participants precisely for their collective protest of Google’s complicity in genocide, not for raising questions about the legally dubious nature of Project Nimbus, which questions were unknown to the Company. Affording Plaintiff every favorable inference on motion to dismiss, as this court must, based on the pleadings cited above, the determination that Plaintiff has not plausibly alleged Google’s knowledge of a violation of law is clearly erroneous.

**CONCLUSION**

For all the reasons stated herein, Plaintiff respectfully requests that this court reverse its decision on the NYLL 740 claim as clearly erroneous and permit such a plausibly alleged claim to proceed.

Respectfully submitted,
JULIEN MIRER & ASSOCIATES PLLC

______/s/__________
By: Jeanne Mirer, Ria Julien
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
212 231 2235
jmirer@julienmirer.com
rjulen@julienmirer.com